*James Perry*, for the appellant.

---

## Coe v. McBrown.

CONTRACT—TRUST DEED—MORTGAGE.—1. A deed of trust, executed by a railroad company to a trustee, to secure the payment of certain bonds, and giving certain powers to the trustee touching the operation of the road, in the granting clause of which the following words are used, " the road, railways, bridges, locomotives, engines, cars, depots, right of way and land, with all buildings, shops, tools, and machinery then in use, owned by them, or which they might thereafter acquire, with the superstructure, rails, and *other materials used thereon*," must be construed to embrace *wood* provided for the use of the road from time to time.

2. But such deed of trust is, in legal effect, only a mortgage, and the company have a right to redeem, and that right is a leviable interest, which may be sold on execution.

3. And a sheriff, having a valid execution against such a railroad, company, has a right to levy upon and sell its interest in the property of the company, and can not be enjoined from doing so, but the purchaser at such sale would not be entitled to the possession of the property sold until he had complied with the conditions of the mortgage.

APPEAL from the *Bartholomew* Common Pleas.

DAVISON, J.—This was a proceeding by the appellants, who were the plaintiffs, against the appellees, to enjoin the sale, on execution, of personal property. The complaint alleges, substantially these facts? On *February* the 28th, 1851, the *Jef-*

Coe *v.* McBrown.

*fersonville Railroad Company* were engaged in the construction of their road from *Jeffersonville* to *Columbus*, a distance of sixty-six miles; and they, the Company, being desirous of raising money to be applied to its construction and equipment, did, at that date, execute and deliver to the defendant, *Coe*, a deed of trust, whereby they sold, transferred, and conveyed to him, (in trust, for the benefit of and to secure the persons who might thereafter become holders of bonds, to be thereafter issued by them, under said deed,) "all that part of the road between said points, then constructed, or thereafter to be constructed, together with all and singular, the railways, bridges, locomotives, engines, cars, depots, stations, right of way, and land owned by the company, with all the buildings, shops, tools, and machinery then in use, owned by them, or which they might thereafter acquire, upon or for that part of the road between said points, with the superstructure and rails and other materials used *thereon*." \* \* \* "And in case the Company shall fail to pay the principal, or any part thereof, or any interest warrants on any of said bonds, when the same may become due according to the tenor thereof, when demanded, then after sixty days from such default, upon request of the holder of such bond, the trustee, his successors in trust, or assigns, may enter into and take possession of all or any part of said premises and property; and as the attorney, in fact, or agent of the Company, by himself, or agent, or substitute duly constituted, have, use, and employ the same, making from time to time all needful repairs, alterations, or additions thereto. And, after deducting the expenses of such use, repairs, alterations, and additions, apply the proceeds thereof to the payment of the principal and interest of all of said bonds remaining due and unpaid." \* \* "And it is further understood and agreed, that the Company reserves and retains the right to survey, locate, use and enjoy any extension of road, and any and all branches they may

deem proper, with all depots, stations, and other erections, privileges and franchises necessary for the same, and to raise money for such purposes by sale of stock bonds or otherwise, which shall be free, clear, and unincumbered from, or in any way affected by this indenture; it being the full intention of said Company to grant to said trustee *no other or further rights or interest than those expressly* given in this indenture." "And nothing herein contained shall be construed to prevent the Company from selling, hypothecating, or otherwise disposing of any bonds, or other securities received by them in payment of stock or otherwise, or any lands or other property acquired, or that may be acquired by them, not necessary to be retained for their road way, depot grounds or stations, nor required for the construction or *convenient use* of that part of said road hereby conveyed, nor from collecting moneys due the Company on stock subscriptions or otherwise. *Provided,* That they shall diligently proceed to collect and faithfully apply all such means to the construction of said road; and, provided also, that no default shall have been made in the payment of the interest or principal of any of said bonds." It is averred that the Company did, thereafter, issue three hundred bonds of 1000 dollars each, bearing interest at the rate of seven per cent. per annum, all under said deed of trust, and of date *March* 1, 1851, payable ten years after date; that two hundred and eighty-nine of these bonds were, (before the rendition of the judgment hereinafter described,) negotiated and sold by the Company, and are now in the hands of *bona fide* holders; that the road was constructed and equipped between the aforesaid points, by and through the means thus raised, and that the bonds all remain unpaid, though the interest thereon has been paid up to *September* 1, 1861.

After the execution of the above deed, viz: on *March* 18, 1853, the Company, for the purpose of raising funds to con-

struct and equip their road from *Jeffersonville* to *Indianapolis*, a distance of 107 miles, executed and delivered to the plaintiff, *Punnett*, a deed of trust, on all of the road constructed, and thereafter to be constructed between the last named points; together with all property and rights then acquired, or thereafter to be acquired, as set forth in the deed to *Coe*, subject, however, to his deed. The deed of trust to *Punnett*, in its stipulations and covenants, is similar to the one above described, and its purpose was to secure the holders of the bonds of the Company, that might be issued under it. The Company, on *April* 1, 1853, issued 700 bonds of 1000 dollars each, payable 20 years after date, with interest at the rate of seven per cent. per annum; of which 400 bonds were negotiated and sold by the Company; and are now in the hands of *bona fide* holders, and remain unpaid as to the principal. The interest is paid up to the 1st of *October*, 1861.

And plaintiffs, in fact, say, that the proceeds of the road are barely sufficient to pay the current expenses for running the same, and the interest on the bond debts; that all the property and rights conveyed by the deeds of trust, if ordered to be sold by a decree of Court, or sold under the provisions of the deeds, would not pay the amounts specified in the bonds, and that the Company have no means to pay the bonds other than by running the road; that on *October* 22d, 1861, the defendant, *McBrown*, recovered a judgment in the *Bartholomew* Circuit Court, against the Company for 278 dollars, upon which an execution was issued and delivered to the sheriff, who, by virtue of it, levied upon 150 cords of wood, and advertised the same for sale, &c. It is averred that the wood so levied on was purchased by the Company since the execution of said deeds, for fuel to be used in operating and running their road, and for that purpose it is held and owned by them, and to deprive the Company of that "essential element in the use of the road would work irreparable injury to

the bond holders." Wherefore the plaintiffs pray for an order enjoining the sale, &c.

The defendants demurred to the complaint. The demurrer was sustained, and plaintiffs excepted. Final judgment was accordingly given, &c. The record presents this question: Does the trust deed cover the property levied on by the sheriff? Various cases are cited by the appellants, but in all of them the decision of the Court is made to turn upon the construction of the deed. Thus, in *Coe* v. *Pennock and Hart*, the "grant," which "was of all the present, and future to be acquired property of the company in the road," &c., was held to be an unreserved conveyance of the entire property of the company, &c. In the deed before us "wood" is not named, but it conveys "the road, railways, bridges, locomotives, engines, cars, depots, right of way and land, with all buildings, shops, tools, and machinery then in use, owned by them, or which they might thereafter acquire, * * * with the superstructure, rails, and other materials used thereon." This stipulation seems to cover everything essential to the successful operation of the road. It could not be operated without fuel, and "wood" was, therefore, a "material necessary to be used thereon." The appellees, however, rely on a subsequent stipulation in the deed which reads thus: "The Company reserve the right to survey, locate, and enjoy any extension of the road, and all branches they may deem proper, and to raise money for such purposes by sale of stock bonds or otherwise, which shall be free and unincumbered from, or in any way affected by this indenture. It being the full intention to grant to said trustee no other future rights or interest than those expressly given." The term "wood," it is true, is not employed in the former stipulation, but it conveys material used on the road, and *wood* being such a material, is plainly embraced in the words "other materials used thereon," and is, therefore, "expressly given." As wood

is essential in operating the road, it was, no doubt, intended to be covered by the grant.

But the deed of trust was, in effect, a mortgage, the Company had a right to redeem, and such right of redemption is a leviable interest which may be sold on execution. *Heinberger* v. *Boyd*, 18 Ind. 420. It follows that the sheriff had a right to levy on and sell the mortgagor's interest in the property, and he can not, therefore, be enjoined; though "the purchaser at sheriff's sale will not be entitled to possession of the property sold, until he complies with the conditions of the mortgage." See *Heinberger* v. *Boyd, supra;* 2 R. S., G. & H., p. 240, § 436. The plaintiffs were not entitled to an injunction, and the result is, the demurrer was well taken.

*Per Curiam.*—The judgment is affirmed, with costs.

*S. Stansifer,* for the appellants.

*Ralph Hill,* for the appellees.